**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

**MARY VENTURA,**               :

            **Plaintiff,**         :     **CIVIL ACTION NO. 3:20-2000**

      **v.**                   :        **(JUDGE MANNION)**

**SHEETZ, INC.,**                :

            **Defendant.**     :

## MEMORANDUM

Presently before the court is the defendant's motion for summary judgment, (Doc. 25). The defendant filed a brief in support, (Doc. 26) and a statement of material facts, (Doc. 27). The plaintiff filed a brief in opposition, (Doc. 32), and a counterstatement of material facts, (Doc. 31). The defendant then filed a reply brief, (Doc. 33). As such, the matter is now ripe for disposition.

### I.   BACKGROUND[1]

Plaintiff, Mary Ventura ("Ventura"), worked for the defendant, Sheetz, for approximately four and a half years at Store #297 located in Wilkes-Barre, Pennsylvania. Sheetz maintains an Employee Handbook that contains the

---

[1] These facts contained herein are drawn from the parties' statements of fact. (Doc. 27 & 31).

company's Communication Policy, Harassment Policy, and Progressive Discipline Policy. For Store #297, Cathleen Garbush ("Garbush") was the Store Manager during Ventura's period of employment.

Ventura was initially hired as a Salesperson and was promoted several times until finally reaching the position of Hospitality Assistant Manager ("Assistant Manager") in February of 2017. Before starting as the Assistant Manager, Sheetz modified the hours of the position from 3:00pm to 12:00am to 4:00pm to 1:00am in order to allow Ventura to ensure her daughter was cared for between 3:00pm and 3:30pm. As Assistant Manager, Ventura was a member of the management team at the store. The management team held meetings once a month.

During her employment with Sheetz, Ventura progressed through the company's progressive discipline policy. On October 8, 2015, Ventura received a written warning for using My Sheetz loyalty cards for customer transactions and redeeming free items earned as a result of those transactions. On April 26, 2018, Ventura received STRIVE counseling due

- 2 -

to issues with managing her time and getting tasks accomplished.[2] On December 17, 2018, Ventura had another STRIVE counseling regarding prioritizing tasks to be completed during her shift. On January 28, 2019, Ventura received a documented STRIVE counseling about her position and creating a positive work environment for the workplace as well as reiterating her prioritization of tasks and communications to staff about tasks. On February 7, 2019, Ventura received a second written warning for unprofessional/inappropriate behavior after she went into an employee's personal belongings and opened a bottle in the employee's bag. The document signed by Ventura during her second written warning contained the language, "[F]urther violation of company policy and/or unsatisfactory conduct or performance may be grounds for disciplinary action, up to and including termination of employment." (Doc. 27, ¶41). On May 15, 2019, Sheetz issued a disciplinary suspension to Ventura for unsatisfactory job performance. The disciplinary suspension document explains that Ventura

---

[2] STRIVE counseling provides "less formal coaching and feedback." (Doc. 27, ¶19).

- 3 -

was suspended after she ignored calls for help in the store when the Made to Order ("MTO") kitchen fell behind, fostering a negative work environment, and failing to complete End of Day tasks/communicating the incomplete tasks to the next shift. (Doc. 27, ¶44).

While investigating the incident that resulted in Ventura's suspension, Sheetz's Employee Relations Specialist, Katelyn Morris ("Morris"), began investigating the incident from May 2, 2019. During this incident, an employee and Ventura had a disagreement. When Ventura realized it was after her shift's end time, she stopped her duties on the floor and entered the store's office and proceeded to stay to write a statement regarding the incident. Ventura wrote the statement in the store office with the door closed. While in the office, employees requested assistance, but Ventura did not respond to these requests. Ventura prioritized writing a statement that she was not required nor asked to write instead of completing the end of day tasks. Even though Ventura's shift ended at 1:00am, she remained at the store and sent the statement via email at 2:18am. Based on the investigation,

- 4 -

Morris recommended a one-day disciplinary suspension, which was issued on May 15, 2019.

Sometime between May 15, 2019 and May 23, 2019, Garbush expressed continued concerns about Ventura's unsatisfactory job performance to Brandi Doroba Henry ("Doroba"), an Employee Relations Specialist for Sheetz. On May 22, 2019, Garbush had a conversation with Ventura regarding some of the issues she was having. Garbush spoke with Ventura prior to her clocking in, so she told Ventura to change her time. On May 23, 2019, Ventura called the Employee Relations hotline to report Garbush telling her to change her time in the system and to report that she was suspended for leaving work to care for her daughter. The hotline complaint was referred to Doroba for investigation. Doroba called Ventura on May 30, 2019 to speak with her about the hotline complaint. During the May 30, 2019 call, Ventura informed Doroba about her daughter being Type 1 diabetic, and Doroba advised Ventura about the possibility of intermittent FMLA leave being available to her. Sheetz then sent Ventura the necessary paperwork, which Ventura returned on June 3, 2019. Sheetz approved the

FMLA intermittent leave request, but also required a "Certification of Healthcare Provider," which was sent to Sheetz on June 10, 2019.

Doroba's investigation revealed tasks were not completed as required between May 21, 2019 and June 11, 2019. Doroba then decided to terminate Ventura's employment due to continued unsatisfactory job performance. Ventura was then terminated on June 18, 2019.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate if the pleadings, the discovery [including, depositions, answers to interrogatories, and admissions on file] and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Turner v. Schering-Plough Corp., 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. Anderson v. Liberty Lobby, Inc.,

- 6 -

477 U.S. 242, 248 (1986); Aetna Cas. & Sur. Co. v. Ericksen, 903 F. Supp. 836, 838 (M.D. Pa. 1995). At the summary judgment stage, the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249; see also Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (a court may not weigh the evidence or make credibility determinations). Rather, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007).

To prevail on summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323-24. The moving party can discharge the burden by showing that on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party. In re Bressman, 327 F.3d 229, 238 (3d Cir. 2003); see also Celotex, 477 U.S. at 325. If the moving party meets this initial burden, the non-moving party must do more than simply show that there is

some metaphysical doubt as to material facts, but must show sufficient evidence to support a jury verdict in its favor.  Boyle v. County of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)).  However, if the non-moving party fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial, Rule 56 mandates the entry of summary judgment because such a failure necessarily renders all other facts immaterial. Celotex Corp., 477 U.S. at 322-23; Jakimas v. Hoffman-La Roche, Inc., 485 F.3d 770, 777 (3d Cir. 2007).

## III.   DISCUSSION

### a.  FMLA Retaliation

Plaintiff first asserts an FMLA retaliation claim. An FMLA retaliation claim requires plaintiff to: (1) invoke her right to FMLA-qualifying leave; (2) suffer an adverse employment action; and (3) the adverse action was causally related to her invocation of rights. Lichtenstein v. Univ. of Pittsburgh

- 8 -

Med. Ctr., 691 F.3d 294, 307 (3d Cir. 2012). An FMLA retaliation claim applies the burden shifting framework from McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

Defendant does not dispute that plaintiff invoked her right to FMLA-qualifying leave and that plaintiff's termination constitutes an adverse employment action. However, defendant disputes that plaintiff's discharge was causally related to her invocation of her FMLA rights.

The parties disagree as to which date qualifies for the triggering of the invocation date. The defendant argues that May 30, 2019 qualifies because this is the date they notified the plaintiff of her rights and she requested the proper paperwork. However, the defendant does not cite to any case law to indicate this is the proper starting point to measure temporal proximity. As both the statute and the Third Circuit indicate, the applicable date is when the employee "invokes" their FMLA rights.  The plaintiff argues June 10, 2019 qualifies because this is the date she turned in her certification from a healthcare provider. The plaintiff argues this in order to show causation, as the Third Circuit has found a close temporal proximity can constitute enough

to be causally related. <u>Budhun v. Reading Hosp. & Med. Ctr.</u>, 765 F.3d 245, 255 (3d Cir. 2014) ("As we held in <u>Erdman</u>, and consistent with <u>Brumbalough</u> and <u>James</u>, it is the time that an employee invokes rights under the FMLA that matters, not when his or her employer determines whether the employee's leave is covered by the FMLA."). Thus viewing either, the date plaintiff turned in the preliminary paperwork or certification from the healthcare provider, as the applicable date that plaintiff invoked her rights results in a temporal proximity that is within the recognized timeframe by the Third Circuit. <u>Lichtenstein v. Univ. of Pittsburgh Med. Ctr.</u>, 691 F.3d 294, 307 (3d Cir. 2012) (explaining previous holdings finding a timeframe that was unduly suggestive with cases ranging from two days to three weeks).

As an FMLA retaliation claim utilizes the burden shifting framework of <u>McDonell Douglas</u> and plaintiff has established a *prima facie* case, the next step requires the employer to put forth a legitimate non-discriminatory reason. Sheetz claims the termination occurred pursuant to Ventura progressing through the various stages of discipline due to her job performance. Sheetz puts forward a timeline of: October 8, 2015 Ventura

was given a written warning for improper use of customer loyalty cards; April 26, 2018, December 17, 2018, and January 28, 2019 Ventura received "STRIVE coachings" that sought to guide her through prioritizing tasks not completed during her shift; February 7, 2019 Ventura was issued a written warning for unprofessional/inappropriate behavior for going through an employee's personal bag; and May 15, 2019 Ventura received a disciplinary suspension for unsatisfactory job performance after ignoring calls for help, not completing necessary job duties, and creating a negative work environment. (Doc. 26, p.12-13).

Plaintiff attempts to challenge Sheetz's legitimate non-discriminatory reason by stating that Sheetz improperly considered her leaving work to care for her daughter. Plaintiff argues that the investigation undertaken by Doroba was solely to investigate her discrimination complaint against Garbush. However, plaintiff does not allege any evidence that the investigation should have been limited in this fashion. To the contrary, the defendant indicates that prior to Ventura's complaint of discrimination Garbush spoke with Doroba about plaintiff's continued job performance issues. (Doc. 27, ¶56).

- 11 -

"[T]he non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them 'unworthy of credence,' and hence infer 'that the employer did not act for [the asserted] non-discriminatory reasons.'" Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994). Plaintiff attempts to attack the employer's offered legitimate non-discriminatory reason on two fronts: (1) the mandatory management meetings and (2) the temporal proximity of filing for FMLA leave and her termination.

Plaintiff continually argues the "mandatory" management meetings were designed to put her in the predicament of caring for her daughter or missing meetings. Even construing plaintiff's statements about the mandatory manager meetings as true. Plaintiff does not dispute that she was accommodated for the previous management meetings. (Doc. 28-1, ¶30-31). Plaintiff even states in her deposition "Q: Were you disciplined for not going to that meeting? A: No, I was fired. Not for not going to the meeting, but as soon as I made that statement to her, I was fired soon after that." (Doc. 35-

1, 233:23-234:3). Plaintiff's argument about the mandatory management meetings misses the mark. It attempts to construe her termination as an attendance matter, but she produces no evidence to indicate her termination for unsatisfactory job performance was pretextual.

Plaintiff again alleges that her write-ups or suspension were related to leaving to care for her daughter, however she has not put forward any evidence that the previously documented write-ups or suspension were related to her attendance in any fashion. Rather, defendant has put forward evidence that plaintiff has a history of documented unsatisfactory job performance. Despite this, Ventura does not address the history of performance issues.

To the extent plaintiff offers temporal proximity alone, the Third Circuit has explained, "temporal proximity alone is not always sufficient to overcome a defendant's allegations of pretext." Andes v. N.J.City Univ., 419 Fed. App'x. 230, 234 (3d Cir. 2011).

As plaintiff has only offered the temporal proximity and the mandatory management meetings as the two grounds to show Sheetz's legitimate non-

discriminatory reason was a pretext for her termination, she has not demonstrated "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them 'unworthy of credence,' and hence infer 'that the employer did not act for [the asserted] non-discriminatory reasons.'" <u>Fuentes</u>, 32 F.3d at 765.

### b. FMLA Interference Claim

Plaintiff puts forward an FMLA interference claim. First, Ventura attempts to reshape this claim from her Amended Complaint, (Doc. 17). In her amended complaint, plaintiff pleads the claim as, "Defendant terminated Ms. Ventura's employment in order to interfere with her rights under the FMLA, and to prevent her from using FMLA leave to which she was entitled." (Doc. 17, ¶79). Ventura does not plead a failure to notify her of her FMLA rights, but rather, that she was terminated to interfere with her rights. Plaintiff

cannot now reshape this claim in her Brief in Opposition, (Doc. 32), as a failure to notify her in order to avoid summary judgment.[3]

Sheetz argues that Ventura's interference claim is really a reiteration of her retaliation claim. In addressing the difference between an interference claim and a retaliation claim, the Third Circuit has explained:

> We went on to state, however, that "[i]t is not clear to us that Erdman [v. Nationwide Ins. Co., 582 F.3d 500 (3d Cir. 2009)] necessarily guarantees that plaintiffs have an automatic right to claim interference where, as here, the claim is so clearly redundant to the retaliation claim." Id. at n. 25. And "we have made it plain that, for an interference claim to be viable, the plaintiff must show that FMLA benefits were actually withheld." Ross v. Gilhuly, 755 F.3d 185, 192 (3d Cir. 2014) (citing Callison v. City of Phila., 430 F.3d 117, 119 (3d Cir. 2005)).
>
> Lichtenstein argues that, because the two claims have different standards of proof, she should be allowed to proceed with both. But she also argues throughout that the only way UPMC interfered with her right to take FMLA leave was by using "these absences and/or requests for FMLA leave *as a negative factor* in its decision to termination her employment."

---

[3] Even if plaintiff were to claim a failure to notify her, she does not dispute that Sheetz did in fact notify her of her rights and sent her paperwork for intermittent FMLA. (Doc. 31, ¶65). Ventura also does not dispute that her FMLA application was "approved" by Sheetz, regardless if the approval came when she turned in the preliminary paperwork or the certification of a healthcare provider. (Doc. 31, ¶67).

Lichtenstein v. Univ. of Pittsburgh Med. Ctr., 598 F. App'x 109, 113-14 (3d Cir. 2015). Similarly, in Mascioli v. Arby's Rest. Grp., Inc., the court had to address whether or not to construe plaintiff's interference and retaliation claims as fundamentally different claims or if the interference claim was simply masquerading as a reiteration of the retaliation claim. 610 F. Supp. 2d 419 (W.D. Pa. 2009). The court explained:

> Plaintiff's argument with respect to her interference claim is that defendant took an adverse employment action because she requested leave. This is, in essence, identical to her retaliation claim asserted in count two. […] In Conoshenti [v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 150 (3d Cir. 2004), holding modified by Erdman v. Nationwide Ins. Co., 582 F.3d 500 (3d Cir. 2009)], the plaintiff claimed that the taking of leave was used by the employer as a negative factor in its decision to discharge the plaintiff. Conoshenti, 364 F.3d at 146–47. The Court of Appeals for the Third Circuit addressed this claim as a retaliation claim under 29 C.F.R. 825.220(c), and not as an interference claim. Id. at 146–48.

Mascioli, 610 F. Supp. 2d at 432-33. Ventura argues that her request for FMLA leave resulted in a disciplinary action that was used against her as grounds to terminate her. Ventura's interference claim relies upon the same

- 16 -

facts as her retaliation claim, and, as such, will be evaluated as a retaliation claim. <u>Conoshenti</u>, 364 F.3d at 146–47; <u>Lichtenstein</u>, 598 Fed.App'x. 109, 113-14.   The court previously addressed the retaliation claim in the prior section.

### c. Association Discrimination under ADA and PHRA

An association discrimination claim requires a plaintiff to show: (1) the plaintiff was qualified for the job at the time of the adverse employment action; (2) the plaintiff was subjected to an adverse employment action; (3) the plaintiff was known by his employer at the time to have a relative or associate with a disability; and (4) the adverse employment action occurred under circumstances raising a reasonable inference that the disability of the relative or associate was a determining factor in the employer's decision. <u>Erdman v. Nationwide Ins. Co.</u>, 621 F.Supp.2d 230, 234 (M.D. Pa. 2007).

The defendant attempts to dispute plaintiff's qualification for the position she held prior to her termination. Sheetz cites <u>Alcantara v. Aerotek, Inc.</u> for the proposition that at the time plaintiff failed to show she was

qualified for the position. 2018 WL 3007528, at *17 (M.D. Pa. June 15, 2018),

aff'd, 765 F. App'x 692 (3d Cir. 2019). However, the plaintiff in the case was

conducting a "working interview." The plaintiff was working the job for a

month as an interview to see how she handled the position. This is vastly

different than Ventura who was in the position for a considerable period of

time. Additionally, Ventura already held the position and was not in a

"working interview" as was the case in Alcantara.

The more pertinent dispute pertains to the fourth requirement for an

association discrimination claim. The Third Circuit has explained how an

association discrimination claim must proceed:

> We first note that the association provision does not
> obligate employers to accommodate the schedule of an
> employee with a disabled relative. Although refusal to "mak[e]
> reasonable accommodations" may constitute illegal
> discrimination against a disabled *employee,* 42 U.S.C.
> §12112(b)(5), the plain language of the ADA indicates that the
> accommodation requirement does not extend to *relatives* of the
> disabled. See 29 C.F.R. §1630.8, Appendix ("It should be noted
> [ ] that an employer need not provide the applicant or employee
> without a disability with a reasonable accommodation because
> that duty only applies to qualified applicants or employees with
> disabilities.").
> […]

- 18 -

The question is therefore whether Erdman has adduced sufficient evidence from which a reasonable jury could infer that Nationwide terminated her *because of* her daughter Amber's disability. *Under the association provision, there is a material distinction between firing an employee because of a relative's disability and firing an employee because of the need to take time off to care for the relative.* The statute clearly refers to adverse employment actions motivated by "the known disability of an individual" with whom an employee associates, as opposed to actions occasioned by the association.

Erdman v. Nationwide Ins. Co., 582 F.3d 500, 510 (3d Cir. 2009) (emphasis added). Plaintiff must show that the termination was motivated by her daughter's disability. The record is devoid of any evidence indicating that Sheetz's decision to terminate Ventura was motivated by her daughter's disability. Erdman makes a distinction between plaintiff requesting time off to care for her daughter versus an adverse employment decision specifically motivated by her daughter's disability. There is no evidence offered by plaintiff to indicate Sheetz was specifically motivated by Ventura's daughter's disability. Even viewing plaintiff's argument about the mandatory management meetings or giving credence to her argument about leaving to care for her daughter, there is no evidence that these claims show Sheetz was specifically motivated by plaintiff's daughter's disability.

- 19 -

### d. ADA and PHRA Retaliation Claim

The PHRA contains a substantially similar anti-retaliation provision compared to the ADA anti-retaliation provision. 43 Pa. Stat. §955(d); 42 U.S.C. §12203(a). The Third Circuit has held that the "PHRA is to be interpreted as identical to federal anti-discrimination laws except when there is something specifically different in its language requiring that it be treated differently." Fogleman v. Mercy Hosp., Inc., 283 F.3d 561, 567 (3d Cir. 2002).

A *prima facie* case of retaliation under the ADA requires the plaintiff prove she: (1) engaged in protected activity; (2) suffered an adverse employment action after or contemporaneous with the protected conduct; and (3) a causal link exists between the protected activity and the adverse action. E.E.O.C. v. Allstate Ins. Co., 778 F.3d 444, 449 (3d Cir. 2015). The Supreme Court has clarified that the plaintiff must prove a traditional "but for" causation to satisfy the third element of a retaliation claim. Univ. of Texas Southwestern Med. Ctr. v. Nassar, 570 U.S. 338, 346-47 (2013). "To establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected

activity and the allegedly retaliatory action, or (2) an intervening pattern of antagonism [or other evidence of retaliatory animus] coupled with timing to establish a causal link." <u>Lauren W. ex rel. Jean W. v. DeFlaminis</u>, 480 F.3d 259, 267 (3d Cir. 2007) (citing <u>Krouse</u>, 126 F.3d at 503–04; <u>Woodson v. Scott Paper Co.</u>, 109 F.3d 913, 920–21 (3d Cir. 1997)). "The amount of time between the protected activity and the alleged retaliation is a circumstance to be considered by a fact-finder in determining if the plaintiff has established the required causation." <u>Shellenberger v. Summit Bancorp, Inc.</u>, 318 F.3d 183, 189 (3d Cir. 2003) (footnote omitted). The "'mere passage of time is not legally conclusive proof against retaliation.'" <u>Krouse</u>, 126 F.3d at 503 (quoting <u>Robinson v. Southeastern Pa. Transp. Auth.</u>, 982 F.2d 892, 894 (3d Cir. 1993)).

Sheetz does not dispute that Ventura engaged in protected activity or that her termination was a materially adverse employment action. (Doc. 26, p. 22).

Ventura attempts to argue that she can support but-for causation by proving the "Defendant's reasons included retaliation." (Doc.32, p.9). Plaintiff

- 21 -

points to the investigation of her complaint against Garbush resulting in her termination. The cited segments within plaintiff's counter-statement of facts refer to plaintiff's deposition testimony where she reiterates the same assertions about her termination that are contained within her complaint without any additional evidence. Plaintiff's bald assertion, without any supporting facts, cannot overcome a motion for summary judgment. Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co., Inc., 998 F.2d 1224, 1230 (3d Cir. 1993) ("Where the movant has produced evidence in support of its motion for summary judgment, the nonmovant cannot rest on the allegations of the pleadings and must do more than create some metaphysical doubt.").

Even if plaintiff did make out a *prima facie* case of retaliation, Ventura does not establish that Sheetz's legitimate non-discriminatory reason was a pretext.  "If the employer provides [a legitimate, non-retaliatory reason for its conduct], the plaintiff must then 'be able to convince the factfinder both that the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action.'" Keslosky v. Borough of Old

- 22 -

Forge, 66 F.Supp.3d at 631 (citations omitted). In order to show pretext, "the employee must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a ... determinative cause of the employer's action." Fuentes, 32 F.3d at 763. In order to "discredit the employer's proffered reason, however, the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent or competent." Id. at 765. Moreover, "the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence.' [Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 531 (3d Cir. 1992)], and hence infer 'that the employer did not act for [the asserted] non-discriminatory reasons.' Josey v. John R.

- 23 -

Hollingsworth Corp., 996 F.2d 632, 638 (3d Cir. 1993)." Billet v. CIGNA Corp., 940 F.2d 812, 825 (3d Cir. 1991).

Sheetz puts forward that plaintiff was already under investigation for additional performance issues. (Doc. 33, p.7) The Supreme Court explained in Clark County School Dist. v. Breeden: "Employers need not suspend previously planned transfers upon discovering that a Title VII suit has been filed, and their proceeding along lines previously contemplated, though not definitively determined, is no evidence whatever of causality." 532 U.S. 268, 272 (2001). Similarly, the Western District explained, "[i]t is axiomatic that subsequent conduct cannot be the motivation for a preexisting decision." Prise v. Alderwoods Grp., Inc., 657 F. Supp. 564, 623 (W.D. Pa. 2009).

Plaintiff attempts to craft pretext by arguing an unduly suggestive temporal proximity, the investigation into the complaint shifting, and the mandatory manager meetings. First, Ventura argues a sixteen-day timeframe from her discrimination complaint to her termination. Plaintiff placed a call to the employee hotline claiming discrimination on May 23, 2019 and was later terminated on June 18, 2019. (Doc. 27, ¶59). This means the

temporal proximity between the adverse employment action occurred twenty-six days after her complaint of discrimination. As the Third Circuit summarized its precedent in Lichtenstein, a timeframe that was unduly suggestive ranged from two days to three weeks. 691 F.3d at 307. Thus, the timeframe between plaintiff's discrimination complaint and the adverse employment action does not definitively produce an unduly suggestive timeframe.

Additionally, prior to Ventura's complaint of discrimination, Garbush had additional conversations with Doroba regarding Ventura's continued performance issues. (Doc. 27, ¶56). Plaintiff attempts to construe the investigation undertaken by Doroba as one that was hijacked to become focused on her termination. To the contrary, defendant has produced evidence that Doroba was already investigating plaintiff's continued unsatisfactory job performance issues and that the next step in the disciplinary process would be termination. (Doc. 27, ¶22-24). The factual situation present in this case resembles the Supreme Court's concerns in Univ. of Texas Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 358 (2013):

- 25 -

> Consider in this regard the case of an employee who knows that he or she is about to be fired for poor performance, given a lower pay grade, or even just transferred to a different assignment or location. To forestall that lawful action, he or she might be tempted to make an unfounded charge of […] discrimination; then, when the unrelated employment action comes, the employee could allege that it is retaliation.

Ventura's attempt to misconstrue the investigation into her unsatisfactory job performance issues and the discrimination complaint does not prove Sheetz had a retaliatory animus toward her.

Lastly, plaintiff argues the mandatory management meetings present a retaliatory animus towards her. Even though plaintiff spends a significant amount of time arguing about the mandatory nature of these meetings, plaintiff admits she was never punished for missing a "mandatory" management meeting. (Doc. 31, ¶26). Even viewing the plaintiff's argument that the management meetings were mandatory does not "discredit the employer's proffered reason" of unsatisfactory job performance. The dispute about the management meetings being mandatory or not does not create a genuine dispute of material fact.

## IV.    CONCLUSION

In light of the foregoing, the Defendant's motion for summary judgment,

(Doc. 25), will be granted. An appropriate order will follow.


                                    *s/ Malachy E. Mannion*
                                    **MALACHY E. MANNION**
                                    **United States District Judge**

**DATE: March 30, 2023**
20-2000-01

- 27 -